**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,**

v.

**LACLEDE GAS COMPANY, Appellee.**

**No. 75–1391.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1975.

Decided Feb. 20, 1976.

Charles S. Hodge, Atty., EEOC, Washington, D.C., for appellee; Julia P. Cooper, Acting Gen. Counsel, Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel and Lutz Alexander Prager, Attys., Washington, D.C., on brief.

Harold I. Elbert, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, Mo., for appellee.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

The Equal Employment Opportunity Commission (EEOC) filed suit in the Eastern District of Missouri against Laclede Gas Company of St. Louis, charging it with employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Supp. II, 1972). On April 4, 1975, the district court granted Laclede's motion for summary judgment and the EEOC appeals from that decision.

The facts relevant to this appeal are essentially undisputed. A black employee of Laclede, Frank C. Pettis, filed a complaint with the EEOC in 1971, claiming that he had been discharged because of his race. The EEOC's district director in St. Louis issued a reasonable cause determination on December 20, 1972.[1] Thereafter, conciliation efforts did not succeed as Laclede advised the EEOC that it did not wish to pursue conciliation. The EEOC, by letter, then advised Laclede that the matter was being referred to the general counsel's office for possible litigation. The EEOC did not, however, as required by its own regulations, 29 C.F.R. § 1601.23, advise Laclede that conciliation had failed but that it [Laclede] could request a resumption within a specified time if it so desired. Pursuant to an authorization by the Commission, the EEOC filed suit on May 9, 1973.

In its motion for summary judgment before the district court, Laclede argued primarily that the EEOC's violation of 29 C.F.R. § 1601.23 concerning conciliation mandated dismissal. In addition, Laclede claimed that another EEOC regulation, 29 C.F.R. § 1601.19b(d), is invalid for authorizing district directors to make unreviewable reasonable cause determinations and to approve conciliation agreements without Commission concurrence.

The district court in its order of April 4, 1975, granting Laclede's motion for

---

1. Laclede claims it discharged Pettis because of excessive absenteeism. The Union filed a grievance on Pettis' behalf and he was subsequently reinstated with backpay and no loss of seniority. The district director's reasonable cause determination concluded that Laclede had discharged Pettis, in part, because of his race, but that his remedy through the grievance procedure had been adequate. The district director's reasonable cause determination focused on statistical evidence supporting his finding that "[Laclede] has failed or refused to grant Negroes and other minorities employment opportunities" in violation of Title VII. The EEOC thereupon invited the parties to join in a collective effort toward a "just resolution of the matter."

summary judgment, relied on the decision of *EEOC v. Raymond Metal Products Co.*, 385 F.Supp. 907 (D.Md.1974). That decision resolved favorably to the employer the same two issues contested on this appeal by the EEOC. During the pendency of this appeal, the Fourth Circuit reversed the *Raymond Metal* case. *EEOC v. Raymond Metal Products Co.*, 530 F.2d 590, No. 75–1007 (4th Cir., Jan. 26, 1976).

The validity of the district court's granting of summary judgment for Laclede has been undercut by the foregoing reversal in *Raymond Metal*. We believe that the Fourth Circuit opinion of Judge John D. Butzner, Jr., in *Raymond Metal* is sound. The factual circumstances there and in this case are substantially similar.[2] Accordingly, we are compelled to reverse.

## I. *Conciliation.*

The relevant EEOC regulation on conciliation provides as follows:

Should a respondent fail or refuse to confer with the Commission or its representative, or fail or refuse to make a good faith effort to resolve any dispute, the Commission may terminate its efforts to conciliate the dispute. In such event, *the respondent shall be notified promptly, in writing, that such efforts have been unsuccessful and will not be resumed except upon the respondent's written request within the time specified in such notice.* [29 C.F.R. § 1601.23 (emphasis added).]

In response to conciliation efforts by the EEOC, Laclede on January 22, 1973, sent a letter to the EEOC in which it declined to pursue conciliation on the basis that the determination of reasonable cause issued by the EEOC was "unfair and illegal." Laclede expressly denied any discrimination in violation of Title VII. The letter, in part, recited:

Laclede's actions with regard to Mr. Pettis were not, in our judgment, discriminatory in any way or in violation of any law. We believe that our recruitment and hiring practices are entirely consistent with both the spirit and the letter of Title VII of the Civil Rights Act. We reject the action of the District Director in finding to the contrary. We feel that there are no substantive issues amenable to conciliation.

The EEOC district director replied to Laclede, stating in part:

We note in your letter to Mr. Lorenz [Equal Employment Officer of EEOC] that you have declined to pursue the Conciliation procedure required in our Regulations. Our next step, therefore, is to refer the case to our Commission Headquarters for evaluation as a possible referral to our General Counsel to take into litigation.

We are informing Mr. Pettis of this next stage in the processing of this case.

The EEOC letter to Laclede, stating that the case would be forwarded to headquarters for evaluation for possible litigation, does not mention resumption of conciliation upon the employer's request as contained in the language of § 1601.23. However, Laclede's January 22 letter clearly and emphatically had rejected any conciliation alternative.

The Fourth Circuit considered a nearly identical factual situation in *Raymond Metal*. The employer, Raymond Metal Company, consistently denied discrimination, as did Laclede. It asserted, as did Laclede, that the original charge made by the aggrieved employee had been unlawfully expanded. Raymond Metal Company stated in the district court that it did not want to engage in conciliation. Laclede made a similar assertion in its January 22nd letter.

The Fourth Circuit in *Raymond Metal* rejected the employer's legal defense premised on the EEOC's violation of § 1601.23, determining that the employer sustained no prejudice from the EEOC's failure to precisely follow its regulation. We agree with this determination and

2. The unpublished district court opinion in this case observed that the factual situation here was like that in *EEOC v. Raymond Metal Co.*, 385 F.Supp. 907 (D.Md.1974).

adopt the reasoning of the Fourth Circuit:

The commission's statutory duty to attempt conciliation is among its most essential functions. It is, therefore, important that it follow its own regulations, especially when it intends to cease administrative efforts and resort to the courts. But not every relaxation of an agency's rules merits dismissal. The imposition of this extreme sanction generally depends on whether the party dealing with the agency was prejudiced. *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 537–39, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); *McCourt v. Hampton*, 514 F.2d 1365, 1370 (4th Cir. 1975); *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1360–61 (6th Cir. 1975).

Raymond Metal's initial refusal to enter into conciliation discussions does not establish lack of prejudice. The regulation expressly allows even a recalcitrant respondent one last chance to settle the dispute. *See EEOC v. Hickey-Mitchell Co.*, 507 F.2d 944, 948 (8th Cir. 1974). We believe, however, that Raymond Metal's actions after receiving the commission's letter show that it was not prejudiced by the commission's failure to state that an opportunity to resume conciliation would be available for a limited time.

The initial charge, which Raymond Metal has consistently denied, dealt with discrimination on account of national origin. During the course of the investigation, the district director determined that there was reasonable cause to believe that Raymond Metal had discriminated on the basis of race and sex, and he notified the company of his findings. In response, it denied the factual basis of these allegations and asserted that as a matter of law

the original charge could not be expanded. The company stated in the district court that it did not want to engage in conciliation discussions, and it has not wavered from this position.

Finally, while the commission did not fully comply with § 1601.23, its notice acknowledged the company's refusal to conciliate and advised that suit might follow. Its letter did not say that the commission would no longer negotiate. If Raymond Metal had changed its mind about conciliation or if the commission had been mistaken about the firmness of Raymond Metal's stand, the company could have contacted the commission any time before suit was filed. In contrast to the procedure followed here, no letter was sent in *Hickey-Mitchell* or *Western Electric, supra*, [*EEOC v. Western Electric Co.*, 382 F.Supp. 787 (D.Md.1974)], so those employers did not know that the commission was planning to move from an administrative to a judicial forum.

Because the commission's letter fairly warned Raymond Metal that suit might be brought and because the company's position after receipt of the notice indicated that it had no interest in conciliation, it is apparent that an offer to attempt conciliation at the option of the company would have been futile. The district court made no finding that Raymond Metal had been prejudiced, and the facts affirmatively disclose that no such finding could be made. We hold, therefore, that the case should not have been dismissed because the commission did not comply in every respect with 29 C.F.R. § 1601.23. [*EEOC v. Raymond Metal Products, Inc.*, 530 F.2d 590, No. 75–1007 (4th Cir., Jan. 26, 1976 (footnote omitted)).][3]

---

**3.** Although here Laclede did not expressly state in district court, as was the case with Raymond Metals Company, that it did not wish to conciliate, Laclede's actions belied any intention of resolving the suit through conciliation. However, if on remand Laclede in good faith desires to pursue conciliation, the trial court has power to stay proceedings for not more than 60 days during which the parties may engage in conciliation efforts. *See* 42 U.S.C. § 2000e–5(f)(1).

*See also EEOC v. Kimberly-Clark Corp.,* 511 F.2d 1352, 1360–61 (6th Cir. 1975); *EEOC v. Louisville & Nashville R.R.,* 505 F.2d 610 (5th Cir. 1974).

▮ Accordingly, we hold the action should not have been dismissed because of the EEOC's failure to follow with exactness its regulation § 1601.23.

## II. *Validity of Commission's Delegation of Important Functions to District Director.*

In Laclede's motion for summary judgment which the district court granted, Laclede charged that the Commission impermissibly delegates to subordinate district directors the power to make reasonable cause determinations and approve conciliation agreements which are unreviewable by the Commission.[4]

The court below agreed with Laclede, relying, as we have already noted, upon the *Raymond Metal* decision at the trial court level. On appeal, the Fourth Circuit reversed on this issue (as well as upon the procedural defect which we have discussed in part I of this opinion).

The Fourth Circuit agreed with the district court determination that the regulation was procedural[5] but rejected the district court's further analysis finding that regulation flawed "because the determination of probable cause was not reviewable by the commission and because the district directors' implicit power to disapprove a conciliation agreement gave them 'de facto power' to commence civil actions." *EEOC v. Raymond Metal Products, supra,* 530 F.2d at 593.

In determining the regulation to be procedural, the Fourth Circuit said:

The regulation under attack does not define the rights and duties of the parties. Instead, it prescribes the methods by which the agency acts. The administrative actions of the commission do not in themselves enforce any rights or impose any obligations. This can be done only by a voluntary conciliation agreement or by a court after a trial *de novo.* Therefore, we agree with the district court that 29 C.F.R. § 1601.19b(d) conforms to the statutory requirement that it be procedural. *EEOC v. Raymond Metal Products, supra,* 530 F.2d at 593 (footnote omitted).

Further, it found no invalid delegation of agency powers to the district director:

In *Fleming v. Mohawk Wrecking & Lumber Co.,* 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947), the Court considered whether the Emergency Price Control Act permitted the administrator to delegate his authority to issue subpoenas. Relying on the statutory authority for the administrator to make regulations to carry out the purpose of the Act, the Court approved the delegation. It said, "Such a rule-making power may itself be an adequate source of authority to delegate a particular function, unless by express provision of the Act or by implication it has been withheld." 331 U.S. at 121, 67 S.Ct. 1129. * * *

\* \* \* \* \* \*

---

**4.** The Commission's regulation here attacked is contained in 29 C.F.R. § 1601.19b(d), which reads, as pertinent:

(d) The District Directors, or other designated officers, on behalf of the Commissioner, may, upon completion of an investigation, dismiss charges, make and issue determinations as to reasonable cause, and serve a copy thereof upon the parties, and make and approve conciliation agreements in those cases where such authority has been delegated to them by the Commission. The determination is final when issued; therefore, requests for reconsideration will not be granted. The District Directors, or other designated officers, may, however, on their own motion, reconsider their determination at any time and, when they do so, they shall promptly notify the aggrieved person, the person making the charge on behalf of the aggrieved person, where applicable, and the respondent, or in the case of a charge filed under § 1601.10, the person aggrieved, if known, and the respondent of their subsequent decision on reconsideration.

**5.** Title VII authorizes the Commission to make "procedural regulations to carry out the provisions" of the Act. 42 U.S.C. § 2000e–12(a).

[T]he magnitude of the task militates strongly against a decision that Congress intended not to allow the commission to delegate these functions. In fiscal year 1974, a total of 9,035 reasonable cause determinations were issued and 5,198 were denied. Were the commission forced to decide or review each of these determinations as they were made, it would be hard pressed for time to make policy, consider charges that present novel and difficult issues, and decide which cases to litigate. Nor could it thoroughly treat the reasonable cause determinations themselves. These calculations do not take into account the failure of endeavors to conciliate that also would have to be reviewed. Like the Court in *Fleming*, 331 U.S. 111, 67 S.Ct. 1129 (1947), we are unwilling, without evidence of congressional intent to the contrary, to read the rule-making regulation so narrowly as to render the agency ineffective. *EEOC v. Raymond Metal Products, supra,* 530 F.2d at 594.

Moreover, the Fourth Circuit found no delegation of agency authority with respect to institution of the suit against Raymond Metal. The EEOC had submitted an affidavit to the district court reciting that "the Commission has never delegated the authority under the statute to file suits to anyone * * *. It is the formal policy of the Commission that no suit may be filed in any case without Commission approval." *EEOC v. Raymond Metal Products, supra,* 530 F. 2d at 595.

The Fourth Circuit with respect to this "unlawful delegation" contention said:

We need not decide whether the commission can delegate its authority to file a civil action, because it is clear that it has not done so. It is also apparent that a civil action is not automatically triggered by the district director's decision that an acceptable conciliation agreement cannot be obtained. Since the commission has not delegated its statutory duty to decide whether to institute suit, the ab-

sence of a regulation on this subject is of no consequence. *EEOC v. Raymond Metal Products, supra,* 530 F.2d at 595.

An EEOC attorney has filed an affidavit in this case similar to that referred to in *Raymond Metal* attesting to its "formal policy * * * that no suit may be filed in any case without approval by the members of the Commission and the Commissioners have never delegated the authority under the statute to file suits to anyone, not even to the General Counsel."

Accordingly, on the authority of the Fourth Circuit's perceptive analysis and resolution in *Raymond Metal* that no unlawful delegation of agency authority existed under the circumstances there presented, we reject Laclede's contrary contention urged upon and adopted by the district court.

Since the grant of summary judgment by the district court rested upon an invalid legal basis, we reverse and direct reinstatement of the complaint.