**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**PIERCE & STEVENS CHEMICAL CORPORATION, Defendant.**

Civ. 75–512.

United States District Court,
W. D. New York.

Aug. 1, 1977.

Donald Applestein, Equal Employment Opportunity Comn., Philadelphia Regional Litigation Ctr., Philadelphia, Pa., for plaintiff.

David K. Floyd, Anne M. Williams, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., for defendant.

### MEMORANDUM and ORDER

ELFVIN, District Judge.

The Complaint herein by the Equal Employment Opportunity Commission ("the EEOC") charges that Pierce & Stevens Chemical Corporation ("P & S") unlawfully discriminates against its female employees in its employment practices. These employment practices include hiring, job assignment, promotional and wage policies and the maintenance of separate lunchroom facilities for men and women employees. In its answer P & S generally denies the allegations of sex discrimination and raises two affirmative defenses. Firstly, the action was not initiated within the time prescribed by the applicable statutes. Secondly, the scope of the unlawful employment practices alleged and of the relief sought in this action exceeds that for which the EEOC is authorized to maintain suit under the applicable statutes.

P & S has moved this Court for the following relief:

(a) partial summary judgment dismissing so much of the complaint as goes beyond that class of employees which was identified as the affected class by the EEOC in its administrative, investigative and conciliation proceedings—i. e., female laboratory employees,

(b) extension of time to answer the EEOC's first set of interrogatories until a court decision is made upon the scope of the action,

(c) leave pursuant to Fed.R.Civ.P. rule 15 to amend its answer to add as an affirmative defense the allegation that the EEOC failed to serve proper notice upon P & S within ten days of the filing of the discrimination charges against defendant as required under 42 U.S.C. § 2000e–5(b), and

(d) summary judgment dismissing the complaint on the grounds stated in its additional affirmative defense.

■ Taking the last point first, P & S's argument that the EEOC failed to serve proper notice within ten days of the filing of the charges contains two alternative positions. Either P & S was not given timely notice as required by 42 U.S.C. § 2000e–5(b) or, if notice was timely served, it was inadequate.

The time sequence of events is not disputed. The EEOC received on January 19, 1973 charges from Karen J. Nemmer and Cornelia Merison, two female employees of P & S. On January 22, 1973, the EEOC referred such charges to the New York State Division of Human Rights as required under 42 U.S.C. § 2000e–5(c). On April 2, 1973, P & S received notices of these charges.

P & S contends that the notices were untimely under 42 U.S.C. § 2000e–5(b) and the EEOC's own regulations, 29 C.F.R. § 1601.13, which require the service of notice on the employer within ten days after the filing of a charge. The EEOC in turn contends that it met the requirements of both the statute and regulations. The EEOC agrees that 42 U.S.C. § 2000e–5(b) and 29 C.F.R. § 1601.13 do require ten days' notice but points however to the requirements under 42 U.S.C. § 2000e–5(c) and 29 C.F.R. § 1601.12 which indicate that no charge can be filed until 60 days after referral to a state agency or earlier termination of the state proceedings. Further, 29 C.F.R. § 1601.12(b)(1)(iii) states:

"(iii) The aggrieved party and any person filing a charge on behalf of an aggrieved party shall be notified, in writing, that the document which he or she sent to the Commission has been forwarded to the State or local agency pursuant to the provisions of section 706(c), and that unless the Commission is notified to the contrary, on the termination of State or

local proceedings, or after 60 (or, where appropriate, 120) days have passed, whichever occurs first, the Commission will consider the charge to be filed with the Commission and commence processing the case. Where the State or local agency terminates its proceedings within sixty (60) (or, where appropriate, 120) days without notification to the Commission of such action the Commission will consider the charge to be filed with the Commission on the date the person making the charge was notified of the termination. (iv) The 60-day (or, where appropriate, 120-day) period shall be deemed to have commenced at the time such document is mailed or delivered to the State or local authority. Upon notification of the termination of State or local proceedings or the expiration of 60 (or 120) days, whichever occurs first, the Commission will consider the charge to be filed with the Commission and will commence processing the case."

The United States Supreme Court approved such deferral procedures in *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). Although the Court did not have before it the ten days' notice provision, the Court did uphold considering a charge not filed when received by the EEOC where the charge must be referred to a state agency for action. The Court found that the EEOC properly may hold a charge in "suspended animation", automatically filing it upon termination of the state proceedings. *Id.*, at 525–6, 92 S.Ct. 616. Delaying service upon the employer of the notice of the charges until the termination of the sixty day deferral period or earlier official termination of the state proceedings is consistent with this decision.

As to the computation of time, the deferral time commenced pursuant 29 C.F.R. § 1601.12(b)(1)(iv) when the charges were mailed to the state agency. Under the regulations the 60 days commenced its running January 22, 1973 and terminated March 23, 1973. On March 30, 1973 the seventh day thereafter, the EEOC sent to P & S a Notice of Charge of Employment Discrimi-

nation for each of the subject charges. P & S admits receiving the notices on April 2, 1973. I find that the EEOC timely served such notices under 42 U.S.C. § 2000e–5(b).

■ P & S's alternative position that the notices were insufficient because they did not provide sufficient information as to the charges is without merit. Section 2000e–5(b) requires that the notice contain " * * the date, place and circumstances of the alleged unlawful employment practice * * * ". P & S's alternative position centers on the "circumstances" facet. Neither the statute nor the regulations define the "circumstances" to be included in the notice of charge. A comparison of the Notices of Charge of March 30, 1973 and the initial charges of January 19, 1973 indicates that the EEOC could not have furnished P & S any more information if the initial charges themselves had been forwarded. The only additional information in the charges are the identities of the employees bringing the charges which, under 29 C.F.R. § 1601.13, the EEOC will not furnish in a notice of charge, and the date of the most recent discrimination. The absence of the date of the most recent discrimination does not render a notice of charge so deficient that dismissal of the complaint is warranted.

As to its motion for partial summary judgment, P & S contends that the complaint impermissibly seeks to enlarge the discrimination claim as to hiring, job assignment, promotions and wages from all female laboratory technicians to all female employees. Defendant points to the EEOC's proposed conciliation agreement (Exhibit C to defendant's original motion) as showing that the conciliation procedures relative to matters other than the lunchrooms limited the affected class to all female laboratory technicians at facilities located in the Buffalo area. In opposition, the EEOC contends that the scope of the complaint is measured by the scope of the investigation which can reasonably be expected to grow out of the charge of discrimination or, alternatively, that the "pre-suit" procedures of the EEOC cured any flaws in the conciliation procedures.

**1166**

The EEOC relies on *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970), and *Tipler v. E. I. duPont de Nemours & Co.*, 443 F.2d 125 (6th Cir. 1971), for the proposition that the EEOC's complaint is only limited by the scope of its investigation. However, as noted in *E.E.O.C. v. National Cash Register Company*, 405 F.Supp. 562 (N.D.Ga. 1975), *Sanchez* focused only on the investigation stage. The EEOC's statutory duty to attempt conciliation is among its most essential functions. *E.E.O.C. v. Raymond Metal Products Co.*, 530 F.2d 590 (4th Cir. 1976). In fact, the sole purpose for the EEOC's existence prior to the 1972 Amendment to Title VII (permitting the EEOC to file court actions) was conciliation of charges of discrimination. The change envisioned by such amendment was not to provide an alternative to the prior procedures but to supplement the EEOC's existing administrative process. The EEOC is to initiate court actions only when the conciliation process is exhausted without achieving employer compliance. *Equal Emp. Op. Com'n v. E. I. duPont de Nemours & Co.*, 373 F.Supp. 1321, 1333–34 (D.Del. 1974), *aff'd*, 516 F.2d 1297 (3rd Cir. 1975). Absent a genuine attempt at conciliation, suit cannot be brought by the EEOC in a district court. The controlling issue in this motion is whether there was a genuine attempt at conciliation by the EEOC of the claims of sex discrimination in hiring, job assignment, promotions and wages concerning all female employees of P & S at its Buffalo facility.

Defendant contends that the conciliation process was formally terminated by the EEOC on September 23, 1974 and that the process, except for the lunchroom facilities issue, included only the female laboratory technicians. In opposition the EEOC contends that either the broader charges were covered in the conciliation process prior to September 23, 1974 or that the "pre-suit procedures" after September 23, 1974 included attempts at conciliation of the broader charges. While I am unpersuaded by the EEOC's first contention, I find that the "pre-suit procedures" met the EEOC's

statutory requirement of conciliation and sufficient notice to preclude any undue prejudice to P & S.

The pre-suit letter procedure is explained in the EEOC's Memorandum dated June 29, 1973, from its General Counsel. The procedure is designed to cover the situation in which the charging party cites a specific violation—for example, racial discrimination in hiring—and during the course of the investigation the EEOC discovers that the corporation has been guilty of other discrimination—for example, on the basis of sex. The EEOC contends that the corporation is on notice that, when charges of racial discrimination in hiring are filed, other aspects of racial discrimination will also be under scrutiny, but that the corporation would not necessarily be on notice that sexual discrimination in hiring, promotion, transfer, etc., would also be under scrutiny. When the EEOC wants to broaden the scope of a suit after the Commission has reached the point at which conciliation has failed and a suit becomes necessary, it sends a copy of a proposed complaint, with all of the additional allegations, with a covering letter which says in effect, "The EEOC plans to file this complaint. Do you want to talk about it in the next ten days?" The letter and proposed complaint are thus intended to put the corporation on notice that the suit will be broadened beyond the issues presented in the original charge. *Dickson v. Mortgage & Trust Inc.*, 9 EPD ¶ 10,215 (S.D.Texas 1975).

As in *Dickson*, P & S protests vigorously against the use by the EEOC of this "pre-suit letter procedure". Such procedure was never published in the Federal Register as is required under 5 U.S.C. § 552(a)(1). In addition the EEOC never advised P & S that this unpublished procedure was being used to enable EEOC to bring the broadest possible lawsuit and to correct any flaw in the conciliation process. Although I agree that the EEOC's pre-suit letter procedure is subject to criticism, under the circumstances of this case I hold that the pre-suit letter procedure provided

sufficient notice and comports with due process.

"While there is support for the proposition that not only Section 2000e–5(f)(1) but also the administrative steps in Section 2000e–5(b) are conditions precedent to suit by the EEOC, *EEOC v. Hickey-Mitchell Co.,* 8 Cir. 1974, 507 F.2d 944, *EEOC v. DuPont de Nemours and Co.,* D.Del.1974, 373 F.Supp. 1321, *aff'd* 3 Cir. 1975, 516 F.2d 1297; *EEOC v. Container Corp.,* M.D.Fla. 1972, 352 F.Supp. 262, such a position must be balanced against the observation of the Sixth Circuit in *EEOC v. Kimberly-Clark Corp.,* 6 Cir. 1975, 511 F.2d 1352, 1360, *cert. denied,* 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368, that '[w]hen an agency neglects to follow a procedural rule but its failure inflicts no significant injury on the party entitled to observance of the rule, the error does not prevent further administrative or judicial action.'" *E.E.O.C. v. Airguide Corp.,* 589 F.2d 1038, 1042 (5th Cir. 1976). *See also, E.E.O.C. v. Raymond Metal Products Co., supra,* at 595; *Equal Employment Op. Com'n v. Laclede Gas Co.,* 530 F.2d 281, 284 (8th Cir. 1976).

If the pre-suit letter were the only substantive exchange between the EEOC and P & S a broadening of the complaint (from the original charges) might not have been permissible (a point not decided here). The events that occurred after the issuance of the pre-suit letter warrant a finding of no prejudice to P & S. On March 19, 1975, the EEOC sent P & S's president a letter with which was enclosed a copy of a proposed complaint. In a timely reply, counsel for P & S indicated that defendant continued to be willing to resolve the matter without litigation. Subsequently, counsel on behalf of P & S forwarded answers to the EEOC's request for information concerning *all* employment positions at P & S's Buffalo facility. On September 2, 1975, the EEOC forwarded to defendant's counsel an analysis of the materials submitted for *all female employees* at P & S. Counsel for defendant transmitted to EEOC on October 30, 1975 P & S's rejection of the EEOC's back pay analysis for *all female employees* and P & S's conclusion that further discussion would not be constructive. Thereupon, the complaint was filed.

Even if P & S were misled by information that the discussions following the pre-suit letter were not "conciliation" but "pre-suit discussions", no prejudice to P & S has been shown. The parties entered into discussions and exchanges sufficient to inform P & S as to the broadened charges in the complaint and to permit P & S to make its position known. Nothing more is required for me to find that there was a genuine attempt at conciliation. I so find.

It is therefore hereby

ORDERED that defendant's original motion for partial summary judgment and its later motion to amend its answer and for summary judgment are denied; and it is further hereby

ORDERED that defendant respond within 30 days of the filing of this order to "Plaintiff's First Interrogatories to Defendant Company" and plaintiff's "Request for Production of Documents", both served on January 14, 1976.