EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

NORTH CENTRAL AIRLINES d/b/a
Republic Airlines, Defendant.

Civ. No. 4–79–257.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 29, 1979.

Barry L. Chaet, Equal Employment Opportunity Commission, Milwaukee, Wis., for plaintiff.

Joseph W. Ettel, Gloria Blaine Olsen, Republic Airlines, Inc., Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

Defendant North Central Airlines, now known as Republic Airlines, moves to dismiss or, in the alternative, for summary judgment.

*Facts*

Plaintiff Equal Employment Opportunity Commission ("EEOC") brought this action against North Central Airlines ("North Central") on May 29, 1979, alleging that North Central's maternity leave policies discriminated against its female flight attendants in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

The chronology of the discrimination charge is important, as will become apparent below.

1. On July 30, 1973, a charge of discrimination was filed against North Central by the Air Line Pilots Association ("ALPA"), the collective bargaining representative for the North Central flight attendants.[1] The EEOC received the charge on August 13.

2. On October 15, 1973, the EEOC took jurisdiction over the charge and served North Central with a notice of the charge.

3. Also on October 15, the EEOC referred the charge to the Minnesota Department of Human Rights for sixty days, as provided under § 706(c) of Title VII.

4. On May 19, 1975, the EEOC issued a Determination finding reasonable cause to believe that North Central had discriminated against female flight attendants. It

---

1. The Association of Flight Attendants is now the bargaining agent for the North Central at-   tendants. It is an affiliate of and successor to ALPA.

sent a Letter of Determination to North Central. Also sent was a Notice of Conciliation, whereby North Central was invited to conciliate the charge.

5. On May 29, 1975, Joseph Ettel, attorney for North Central, sent a letter to EEOC stating that the airline was willing to engage in conciliation. EEOC received the letter on June 2.

6. On July 30, 1975, Ettel met with a representative of the EEOC, who presented a "detailed offer of settlement." Koepp Affidavit at para. 4. Ettel requested that conciliation on some of the issues be postponed until the U.S. Supreme Court decided *General Electric v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). There was no agreement as to the other issues.

7. From that time until December 10, 1976, the date the Supreme Court decided *General Electric,* the parties apparently engaged in no settlement negotiations.

8. In light of *General Electric,* the EEOC reevaluated its May 19, 1975, Determination and issued an Amended Determination on January 28, 1977.

9. On January 31, 1977, EEOC sent North Central a second invitation to participate in settlement discussions.

10. On February 9, 1977, Ettel of North Central responded that the airline was willing to engage in conciliation and suggested that a meeting be held in Milwaukee in May. Ettel noted, however, that "We continue to question the representation concerning this charge. As of this date, we still do not have any indication as [to] specific individuals covered." The Ettel letter was received by EEOC on February 14, 1977.

11. About one and a half years later, on October 31, 1978, EEOC sent to North Central a Notice of Conciliation Failure. During that time period, EEOC evidently never contacted North Central about continuing settlement negotiations, and North Central never advanced a counter-proposal to the original EEOC proposal nor was in contact with EEOC.

12. On February 12, 1979, North Central and the ALPA entered into an agreement, retroactively effective to January 1, 1979. Briefly, North Central agreed to new procedures for determining how long pregnant flight attendants could· remain on the job and agreed to grant longevity to all attendants who had lost seniority as a result of the prior maternity leave policies. North Central did not agree to provide back pay and other retrospective relief to those attendants who had been adversely affected by its prior employment practices.

·13. On March 27 and May 17, 1979, the ALPA sent letters to the EEOC requesting that EEOC withdraw its Charge of Discrimination. On April 4, and June 4, 1979, the EEOC sent letters to the ALPA denying the requests.

14. The instant lawsuit was filed on May 29, 1979.

North Central's motion to dismiss is in five parts:

*1. Conciliation as a jurisdictional prerequisite.*

North Central initially alleges that the EEOC has failed to conciliate this dispute, a jurisdictional prerequisite to the filing of suit under §§ 706(b) and 706(e)(1) of Title VII.

When absolutely *no* conciliation has occurred, the courts have no jurisdiction over the EEOC suit. *See, e. g., Patterson v. American Tobacco Co.,* 535 F.2d 257 (4th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *EEOC v. United States Pipe & Foundry Co.,* 375 F.Supp. 237 (N.D.Ala.1974); *EEOC v. Container Corp. of America,* 352 F.Supp. 262 (M.D.Fla.1972). However, if some conciliation efforts have occurred, substantial deference should be given to the EEOC's determination that conciliation efforts have failed, a determination within its discretion under § 706(e)(1) of Title VII. *EEOC v. Greyhound Lines, Inc.,* 411 F.Supp. 97 (W.D.Pa. 1976); *EEOC v. Avon Products, Inc.,* 15 FEP Cases 1562 (N.D.Ga.1977).

■ In this case, some conciliation occurred. The EEOC presented what it calls a "detailed" offer. From then until now North Central has not presented any counter-offer. Further, although Mr. Ettel of North Central agreed to further conciliation discussion, his ambiguous response could reasonably be interpreted as a continuing refusal to negotiate along the lines of the EEOC's proffered settlement, making futile future negotiation efforts.

This Court does not condone the failure of the EEOC to make further conciliation contact with North Central after North Central's response of February 9, 1977. However, since some conciliation efforts have taken place, and since deference should be given to the determination of the EEOC that conciliation efforts had failed, this Court finds that it has subject matter jurisdiction over the lawsuit.

2. *Failure to state a claim for which relief may be granted.*

■ North Central's next contention, citing *EEOC v. Westvaco Corp.*, 7 FEP Cases 579 (D.Md.1974), is that EEOC's purported failure to conciliate should lead to dismissal for failure to state a claim upon which relief may be granted.

The *Westvaco* court apparently rested its holding on two foundations. First, it found that the EEOC has disregarded Title VII requirements because it filed suit "without formal determination of reasonable cause or any effort to conciliate." 7 FEP Cases at 582. In contrast, the EEOC in this case made the determination of reasonable cause and afforded North Central an opportunity to conciliate.

Second, *Westvaco* suggested that a suit may be dismissed if EEOC ignores its own regulations regarding conciliation. North Central argues that 29 CFR § 1601.23, which was repealed effective October 14, 1977, required the EEOC to "promptly" notify North Central once it determined that conciliation efforts had failed and to give North Central a last chance to request conciliation.

There is no need to reach the difficult and amorphous factual question of whether EEOC's lack of notification to North Central prior to October 14, 1977, violated § 1601.23's "promptly" requirement. No prejudice to North Central from the purported violation of the regulation has been shown. Although governmental agencies must comply with their own regulations, *American Farm Lines v. Blackball Freight Service*, 397 U.S. 532, 538–39, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970), "substantial prejudice" must be shown before dismissal will result. *Id.*; *EEOC v. Laclede Gas Co.*, 530 F.2d 281 (8th Cir. 1976). In this case, there has been no such showing. North Central has demonstrated no harm to its position in the lawsuit from the one and a half year delay from Ettel's response to the Notice of Conciliation Failure.

Thus, North Central's motion to dismiss for failure to state a claim is denied.

3. *Laches.*

■ Over six years have passed since the first charge of discrimination was filed against North Central. The EEOC's dilatory handling of the case is regrettable. However, North Central's motion to dismiss on laches grounds must be denied.

The standard for a finding of laches was set out in the case of *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977):

[A] defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts. If such cases arise the federal courts do not lack the power to provide relief. This Court has said that when a Title VII defendant is in fact prejudiced by a private plaintiff's unexcused conduct of a particular case, the trial court may restrict or even deny backpay relief. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424–25, 95 S.Ct. 2362, 2374–75, 45 L.Ed.2d 280. The same discretionary power "to locate 'a just result' in light of the circumstances peculiar to the case,"

*ibid.,* can also be exercised when the EEOC is the plaintiff.

432 U.S. at 373, 97 S.Ct. at 2458.

The Eighth Circuit has interpreted this passage as providing two criteria for the dismissal of a Title VII suit for laches: 1) An inordinate EEOC delay in filing suit, resulting in 2) undue prejudice to the defendant. *EEOC v. Liberty Loan Corp.,* 584 F.2d 853, 857 (8th Cir. 1978).

A close question is presented as to whether EEOC's delay was "inordinate." Six years from the filing of the charge to the filing of the complaint is a long time, but two factors mitigate the impact of the six-year computation. First, some of the delay was at the behest of North Central, which requested that conciliation efforts be stayed pending the *Gilbert* decision.

Second, EEOC has a substantial backlog of cases. Although general references to the EEOC's heavy workload do not refute a charge of inordinate delay, *EEOC v. Liberty Loan Corp., supra,* at 857, the EEOC has specifically offered affidavits to prove that the Milwaukee office has several thousand files and that the official in charge of the North Central file had 125 other cases pending during the conciliation period.

Although the question is a close one, this Court finds that the delay in this case was not so inordinate as to warrant dismissal.

Alternatively, significant prejudice to the defendant has not been shown. The defendant "must establish 'with such clarity as to leave no room for controversy' that it has been substantially and unduly prejudiced in its ability to defend the lawsuit because of the EEOC's delay. *EEOC v. Liberty Loan Corp.,* supra, 584 F.2d at 857." *EEOC v. Westinghouse Elec. Corp.,* 592 F.2d 484, 486 (8th Cir. 1979). In this case, North Central has offered no affidavits or allegations to show that the company's ability to defend this lawsuit has been substantially impaired by any delays. The cases cited by North Central that have dismissed Title VII suits on laches grounds are all distinguishable in that prejudice from lost records or unavailability of witnesses was shown. *See, e. g., EEOC v. Liberty Loan, supra; EEOC v. J. C. Penney Co.,* 12 FEP Cases 640 (N.D.Ala.1975).

### 4. *The Administrative Procedure Act ("APA").*

North Central also posits that 5 U.S.C. § 706[2] provides a statutory basis for dismissal of agency suits which are unreasonably delayed and cause prejudice to the defendant. A literal reading of the statute does not support this conclusion, but some courts have held that the statute creates a laches-type doctrine. *See, e. g., EEOC v. Moore Group, Inc.,* 12 FEP Cases 1758 (N.D. Ga.1976); *EEOC v. Bell Helicopter,* 426 F.Supp. 785 (N.D.Tex.1976); *EEOC v. American National Bank,* 574 F.2d 1178 (4th Cir. 1978).

The Eighth Circuit has not decided whether § 706 may be the vehicle for dismissal due to delay. Instead, it has determined that the *Occidental Life* criteria of inordinate delay and substantial prejudice apply to § 706 assuming, *arguendo,* that the section does create a laches doctrine. *EEOC v. Liberty Loan, supra.* North Central has not satisfied the *Occidental Life* criteria, as indicated above.

### 5. *The effect of the North Central/ALPA settlement.*

North Central's final argument is that its settlement with the ALPA bars the EEOC lawsuit. This is essentially a *res judicata* argument; once a private party settles, he or she should not be able to use the EEOC to circumvent the settlement, thereby obtaining additional relief. *See EEOC v. North Hills Passavant Hospital,* 19 FEP Cases 205 (W.D.Pa.1977); *EEOC v. Kimberly-Clark Corp.,* 511 F.2d 1352 (6th Cir. 1975); *United States v. Allegheny-Ludlum Industries, Inc.,* 517 F.2d 826 (5th Cir. 1975).

**2.** § 706 provides that "The reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed . . . .."

This suit should not be dismissed simply because ALPA has settled. EEOC should be able to continue the suit to benefit certain persons not covered by the settlement, including flight attendants no longer employees of North Central who were allegedly discriminated against. Further, ALPA's settlement did not restrict the relief that may be obtained on behalf of *individual* flight attendants. A union may not waive its individual members' private Title VII rights. *United States v. Allegheny-Ludlum Industries, Inc., supra,* at 857; *Alexander v. Gardner-Denver,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

Therefore, the North Central/ALPA settlement does not bar this lawsuit; the EEOC should be allowed to pursue the suit, thereby representing the interests both of the individual female flight attendants and the general public.

For the foregoing reasons, IT IS ORDERED that the motion of the defendant to dismiss or, in the alternative, for summary judgment be and hereby is denied.