**EQUAL EMPLOYMENT OPPORTU-
NITY COMMISSION and Con-
stance Amos, Plaintiffs,**

**v.**

**AUTOZONE, INC. Defendant.**

**No. 00–2923 MA/BRE.**

United States District Court,
W.D. Tennessee,
Western Division.

March 31, 2003.

Celia Liner, Memphis, TN, Deidre Smith, Memphis, TN, and Tom Borek, for EEOC.

Reva M. Kreigel of the Donati Law Firm, LLP, Memphis, TN, for Constance Amos.

Walter Christy and Tracy Hidalgo of Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, for defendants.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LACHES, DENYING DEFENDANT'S MOTION TO LIMIT THE TEMPORAL SCOPE, AND DENYING DEFENDANT'S MOTION TO LIMIT MONETARY RELIEF**

MAYS, District Judge.

Before the court is Defendant's motion to dismiss based on laches or to limit the temporal scope or to limit monetary relief filed on April 15, 2002.[1] Plaintiff Equal Employment Opportunity Commission (the "EEOC" or the "Commission") responded to Defendant's motion on May 15, 2002. For the following reasons, the court DENIES Defendant's motion for summary judgment on the issue of laches, DENIES Defendant's motion to limit the temporal scope of discovery and DENIES Defendant's motion to limit monetary relief in this matter.

## I. Background

This case involves allegations of race and gender employment discrimination. The case commenced with the filing of a complaint on September 29, 2000. (Compl. at 1.) The court's jurisdiction is based upon 28 U.S.C. § 1331 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII" or "Section"). (Compl. ¶ 1.)

The following facts are undisputed. Plaintiff EEOC is an agency of the United States of America charged with the administration, interpretation and enforcement of Title VII. (*Id.* ¶ 3.) Plaintiff Constance Amos ("Amos") is a female resident of Shelby County, Tennessee, and was employed by Defendant Autozone Inc. ("Autozone") beginning on April 13, 1998 at its headquarters located in Memphis, Shelby County, Tennessee. (Compl. to Intervene ¶ 3.) Amos was allowed to intervene in this action as a party Plaintiff pursuant to Federal Rules of Civil Procedure 24 and 42 U.S.C. § 2000e–5(f)(1) in an order by this court on July 3, 2001. (Docket No. 26.) Defendant Autozone is a corporation doing business in Memphis, Shelby County, Tennessee and has continuously had at least fifteen (15) employees. (Compl. ¶ 4.) Therefore, Autozone is an employer as de-

---

**1.** The court will treat Defendant's motion to dismiss based on laches as a motion for summary judgment because it considers evidence outside the pleadings on this matter.

fined in § 701(b) of Title VII. 42 U.S.C. § 2000e(b). (Compl. to Intervene ¶ 4.)

On May 31, 1995, EEOC Chairman Gilbert Casellas filed a Commissioner's Charge against Defendant, alleging that since January 1, 1993, Defendant had discriminated against blacks and females by refusing to hire and promote them into the categories of officials and managers. (Def's Mot. to Dismiss at 3.) The Commissioner's Charge was based on EEOC investigator Irma Boyce's interviews with five black employees/job applicants and Defendant's EEO–1 reports for 1990–1993. (*Id.*) The EEOC investigated Defendant for more than two years. (*Id.* at 4.) The Commission's investigation included an on-site inspection of Autozone headquarters on November 26, 1996. (*Id.*) By this time, Defendant had made progress in establishing a diverse recruiting staff, which included expanding its minority recruiting efforts. (*Id.* at 3–4.) On September 30, 1997, the Commission issued a Determination, finding reasonable cause to believe that the discriminatory violations cited in the Commissioner's Charge had occurred and were continuing to occur. (Pl.'s Resp. to Def.'s Mot to Dismiss at 2; Def's Mot. to Dismiss at 5.) In its Determination, the Commission inferred that Defendant had engaged in a pattern and practice of discrimination against blacks and females since January 1, 1993 because Defendant's promotion procedures were undefined and subjective. (Def's Mot. to Dismiss at 6.)

Following the September 30, 1997 Determination, on December 12, 1997, the EEOC invited Defendant to engage in conciliation discussions. (Pl.'s Resp. to Def.'s Mot to Dismiss at 3.) After telephone conversations and information exchanges, the parties conducted a conciliation conference on April 21, 1998. (*Id.*) The parties continued to negotiate and held a second conciliation conference on October 19, 1998. (*Id.*) Defendant rejected the Commission's final offer on October 21, 1998 and conciliation efforts were concluded on November 10, 1998. (*Id.*) On November 16, 1998, this case was transferred to the Commission's legal department for review by the regional attorney and the Office of General Counsel in Washington D.C. (*Id.*) Two individuals have filed charges alleging discrimination in hiring and/or promotions against Defendant since the 1995 Commissioner's Charge. (Def's Mot. to Dismiss at 9.) Lisa Loesel, a female employee, charged that she was denied promotion to a real estate manager position on April 4, 1997, and Intervener Constance Amos alleged that she was denied promotion to a real estate manager position during the period from April 7, 2000 to July 3, 2000. (*Id.*)

## II. Laches

Defendant has submitted a motion to dismiss this entire action based on laches because of the Commission's alleged unreasonable delay in the processing of its charge and the prosecution of this suit to the detriment and prejudice of Defendant. EEOC argues that it has not unreasonably delayed the processing of its charge and has carefully sought to discharge its administrative duties before prosecuting this action.

The court, in deciding this issue, will apply Federal Rule of Civil Procedure 56(c) to Defendant's motion to dismiss based on laches because it considers affidavits and other evidence outside the pleadings. Under Rule 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the

absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate, *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefor must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Laches is an equitable defense barring Plaintiffs from proceeding if they unreasonably delayed in filing their suit and that delay harmed the Defendant. Laches " 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.' " *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2077, 153 L.Ed.2d 106 (2002) (quoting *Kansas v. Colorado,* 514 U.S. 673, 687, 115 S.Ct. 1733, 131 L.Ed.2d 759 (1995)). Although Title VII contains no express time limit on the Commission's prosecuting a charge in a lawsuit, the "EEOC may be barred by laches from filing a suit if it has delayed inexcusably and the defendant has been materially prejudiced by the delay." *Occidental Life Ins. v. EEOC,* 432 U.S. 355, 373, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). Thus, Defendant is entitled to summary judgment as a matter of law based on laches if it can demonstrate the absence of an issue of material fact as to the Commission's alleged unreasonable delay in filing and prosecuting the instant action and resulting prejudice to the Defendant.

## A. Delay

Defendant argues that the EEOC unreasonably delayed this case for approxi-mately five years and four months after the Commissioner's charge was filed on May 31, 1995. Courts have applied laches in similar cases with delays of equal length. *See, e.g., EEOC v. Dresser Indus., Inc.,* 668 F.2d 1199, 1202 (11th Cir.1982) *("Dresser")*(holding a delay of five years and eight months unreasonable); *EEOC v. Alioto Fish Co.,* 623 F.2d 86, 88 (9th Cir. 1980) *("Alioto")*(holding a delay of five years and two months unreasonable); *EEOC v. Massey–Ferguson, Inc.,* 622 F.2d 271, 278 (7th Cir.1980) (holding a delay of four years and nine months unreasonable); *EEOC v. Liberty Loan Corp.,* 584 F.2d 853, 857–58 (8th Cir.1978) *("Liberty Loan")* (holding a delay of four years and four months unreasonable).

Nevertheless, a delay of five or more years was held reasonable when the EEOC offered a viable excuse for the delay. *See, e.g., EEOC v. Jacksonville Shipyards, Inc.,* 690 F.Supp. 995, 1000 (M.D.Fla.1988) (finding a delay of five years and ten months reasonable because the delay was due to the EEOC's deferral of the case to another federal agency to conduct an audit).

Courts have differed, however, about whether the EEOC's heavy workload is a viable excuse for delay. *Compare EEOC v. N. Cent. Airlines,* 475 F.Supp. 667 (D.Minn.1979) (finding a six year delay between filings reasonable where Defendant requested a stay of conciliation efforts and the Commission submitted evidence of its substantial case backlog) *with EEOC v. Bell Helicopter Co.,* 426 F.Supp. 785, 793 (N.D.Tex.1976) (holding that despite the EEOC's heavy workload and overburdened staff, there must be a limit to the prejudice and inconvenience placed on an employer by the Commission's inability or unwillingness to act promptly). Thus, the reasonableness of the EEOC's delay does not depend on the total amount

of time between filings, but on the EEOC's reason for the delay.

In determining the reasonableness of the EEOC's five year and four month delay, the court will separate the delay time into three distinct periods. During the first period, between May 31, 1995 and December 12, 1997, the EEOC analyzed 15 boxes of application information submitted by Defendant and conducted an on-site inspection of Autozone headquarters on November 26, 1996, culminating in a determination letter issued on September 30, 1997. Accordingly, the court finds that the Commission's efforts during the first time period were reasonable and did not contribute to unreasonable delay of this matter.

The second period consists of December 12, 1997 through November 10, 1998. This period was largely devoted to settlement efforts. The court notes that two settlement conferences were conducted during this period—the first on April 21, 1998 and the second on October 19, 1998. The parties engaged in numerous telephone conversations and additional document exchanges in an effort to conciliate during this period. Thus, the court finds that the EEOC efforts during the second period were reasonable and did not contribute to unreasonable delay of this case.

■ The critical period for assessing the reasonableness of the Commission's delay is the third period, after the conciliation efforts were terminated. During this period, from November 10, 1998 until September 29, 2000, it appears from the record that the EEOC was inactive. On November 16, 1998, the local office for the EEOC transferred this matter to the EEOC legal department. After the transfer, however, the Commission took no further action in this case for approximately twenty-two months. The EEOC offers no specific reason for this inactive period and does not explain what occurred after the case was

submitted to the Commission's legal department. Without evidence of a substantial case backlog, review of documents by another federal agency or another viable reason for delay, the court finds that the EEOC's inactivity during the third time period amounted to unreasonable delay in this case. *See Alioto*, 623 F.2d at 88 (finding that the EEOC's twenty-month delay in bringing suit after terminating conciliation efforts, without an excuse other than its backlog, was unreasonable delay). Therefore, Defendant has met the first requirement for proving laches.

## B. Prejudice

■ Defendant argues that it has been materially prejudiced by the EEOC's delay primarily because relevant witnesses are unavailable to testify given the substantial turnover of its supervisors and employees. Defendant has provided a list of human resources personnel who are no longer employed with the company or have relocated. These potential witnesses include: (1) William Poynter, Corporate Recruiter, employed September 1994 through March 1997; (2) Jeanne Carr, Director of Human Resources, employed January 30, 1995 through January 30, 1996; (3) Buck Brown, Vice President of Human Resources, employed December 1994 through February 20, 1998; (4) Bob Oswald, Director, Recruiting, VP, AZ Development, employed 1981 through October 26, 1999; (5) Bitsy Kasselberg, Recruiter, employed 1978 through 1999; (6) John Marcinik, Director of Personnel, employed 1984 through 1997, and (7) Bob Lombardi, EEO Manager, employed September 14, 1992 through May 28, 1999.

Defendant relies on *Alioto* to support its position. In *Alioto*, the Ninth Circuit found prejudice (1) because at least three persons who had authority to hire during the relevant period were deceased; (2) the

EEOC conciliator was dead; (3) the manager at the time the Plaintiff had applied for the job had retired and was elderly; (4) only one of the sixteen persons employed in the job at issue was still employed by the Defendant; and (5) the EEOC employee who investigated the charges no longer worked for the EEOC and was unavailable at the time of the judgment. 623 F.2d at 88.

In considering Defendant's arguments, the court notes two opinions from the Eleventh and Eighth Circuits, respectively, that address the specific laches defense at issue in this case. In *Dresser*, the Eleventh Circuit affirmed the district court's dismissal of a case due to laches. 668 F.2d at 1204. Finding that the EEOC's delay was unreasonable (more than three and a half years between the filing of the claimant's charge and the Defendant's receipt of a copy of that charge) and materially prejudiced the Defendant, the Eleventh Circuit held that it "refuse[d] to require employers to foretell the future and the potential unavailability of witnesses" in response to the EEOC's argument that the Defendants should have made a greater effort to secure statements from witnesses before they became unavailable. *Id.* at 1203 n. 11. In *Liberty Loan*, the Eighth Circuit affirmed the district court's dismissal of a case based on laches due to the EEOC's unreasonable delay and material prejudice to the Defendant because: (1) "all the persons even remotely connected with the original charge were no longer employees of the company[,]" and (2) the branch at issue "had been closed and their records consolidated and in some cases lost." 584 F.2d at 855.

In the instant action, however, the prejudice suffered by the Defendants in *Alioto, Dresser*, and *Liberty Loan* is distinguishable from the prejudice allegedly suffered by Autozone. Unlike the Defendant in *Alioto*, Autozone has not alleged that its former employees are deceased or that the EEOC personnel who investigated this matter are now unavailable. Unlike the Defendant in *Dresser*, Autozone received prompt notice of the Commissioner's charge against it on May 31, 1995. *See EEOC v. Jacksonville Shipyards, Inc.*, 690 F.Supp. 995, 1000 (M.D.Fla.1988) (noting that a salient factor in determining prejudice is whether the Defendant received prompt notice of the pending charges of discrimination against it). Furthermore, this case is distinguishable from the Defendant's prejudice in *Liberty Loan* because the Autozone department at issue has not closed or merged with another department in Autozone.

The Commission argues that Defendant could have and should have maintained records, taken testimony of key employees, and preserved evidence in anticipation of ensuing litigation. *See EEOC v. Phillips Colls., Inc.*, 984 F.Supp. 1464, 1470 (M.D.Fla.1997) (finding the Defendants were not prejudiced by the EEOC's delay because the Defendants made "no showing of any efforts to track down any of their former employees ... and [made] no showing that such former employees would have provided valuable testimony had [the] case proceeded to trial more rapidly."). Thus, the Commission argues that Defendant has not been materially prejudiced because it has not presented any evidence of its efforts to locate these relevant witnesses, to confirm their unavailability, or to demonstrate the value of their testimony. *See id.*

The Sixth Circuit has not taken a position on this issue. Therefore, the court looks to other circuit courts of appeals for guidance. In examining the circuit split on this issue, the court finds that the weight of authority supports the Commission's arguments. In *EEOC v. Great Atl.*

*& Pac. Tea Co.*, the Third Circuit held that "changes in management personnel as a result of ... restructuring ... would not as a matter of law satisfy the prejudice element of the laches defense." 735 F.2d 69, 84 (3rd Cir.1984). In *Howard v. Roadway Express, Inc.*, the Eleventh Circuit held that the Defendant was not prejudiced because it had prompt notice and "could have maintained its records and taken testimony of key employees in anticipation of the ensuing litigation." 726 F.2d 1529, 1533 (11th Cir.1984). In *Bernard v. Gulf Oil Co.*, the Fifth Circuit held that "[a] party cannot assert the defense of laches merely because it has failed to preserve evidence despite knowledge of a pending claim." 596 F.2d 1249, 1257 (5th Cir.1979). Also, the court notes that in *EEOC v. Massey–Ferguson, Inc.*, 622 F.2d 271, 280 (7th Cir.1980) and *EEOC v. Westinghouse Elec. Corp.*, 592 F.2d 484, 487 (8th Cir.1979), the Seventh and Eighth Circuits reversed district courts' grants of summary judgment for the respective Defendants because the Plaintiffs had raised genuine issues of material fact about whether the Defendants had been materially prejudiced by the EEOC's delay.

Accordingly, the court finds that Defendant has not met its burden of proving that no genuine issue of material fact exists about whether it was materially prejudiced by the Commission's delay. All of the seven potential witnesses identified in Defendant's motion were still employed by Defendant when it received the Commissioner's Charge from the EEOC on May 31, 1995. The weight of circuit authority supports the proposition that the Defendant's failure to preserve evidence upon prompt notice of a pending claim from the Commission should not be held against the Commission. Thus, the court concludes that Autozone has not met its burden of proving that no material issue of fact exists with respect to the second requirement of its laches defense.

## III. Temporal Scope of Discovery

### A. Claim of Pattern and Practice of Discrimination

■ Before addressing the time limits on discovery in this matter, the court must first decide whether the Commission has sufficiently raised an issue of material fact about whether its claim comes under the "continuing violation" doctrine for purposes of applying Section 2000e–5(e). The EEOC filed the instant action as a pattern and practice discrimination action under 42 U.S.C. § 2000e–5(e). Section 2000e–5(e)(1) requires that "[a] charge under this section shall be filed ... within three hundred days after the alleged unlawful employment practice occurred." The Sixth Circuit in *Haithcock v. Frank* has held that "where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." 958 F.2d 671, 677 (6th Cir.1992). The Sixth Circuit has further ·held that a Plaintiff can demonstrate a continuing violation upon showing (1) that there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation or (2) that there has been a longstanding and demonstrable policy of discrimination. *See Alexander v. Local 496, Laborer's Int'l Union of N. Am.*, 177 F.3d 394, 408 (6th Cir. 1999). Furthermore, Plaintiffs are allowed to make a showing of pattern or practice discrimination through statistical evidence of disparate treatment combined with anecdotal evidence of the employer's intent to discriminate. *See Mozee v. Am. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir.1991); *see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (*"Teamsters"*).

■■ The Commission alleges that it found anecdotal and intentional evidence of discrimination during its investigation.

The Commission also avers that it has identified qualified African–American and female applicants who were not hired and has obtained statements from employees attesting to Defendant's discriminatory hiring practices. The EEOC supports its theory of a continuing violation by identifying individuals claiming discrimination after 1995, including Lisa Loesel (alleging in 1997 that five males, who were less qualified that she, were promoted), Roberta Wilson (testifying in her deposition that the continued practice of word of mouth recruitment lasted through 1996), Intervener Constance Amos (alleging that in 2000, she was denied a promotion to real estate manager, although several less qualified males were promoted), and Terry Weakes (employed by Defendant until 2000 and alleging that she was the victim of discrimination).[2] The court finds that the Commission has raised an issue of material fact as to whether its claim comes under the "continuing violation" doctrine for purposes of applying Section 2000e–5(e). Therefore, the court denies Defendant's motion for summary judgment alleging the insufficiency of the EEOC's pattern and practice discrimination claim.

### B. Time Limits for Discovery

■ Defendant argues that the court should limit the temporal scope of this action to the period investigated and conciliated by the EEOC, from July 1994 through June 1995. Defendant further asserts that the 10–year period from January 1, 1993, through the present, proposed by the Commission, would constitute a burdensome fishing expedition. Defendant avers that the court should not allow the relevant period to precede July 1994 because: (1) it has destroyed many of the documents before this period, (2) the only

basis for the Commission's investigation of this period is an inference of discriminatory conduct, and (3) the EEOC has not identified an overarching policy of discrimination. Defendant also argues that the period should terminate in June 1995 because the Commission has not established a pattern and practice of discrimination after this period and because subsequent charges and complaints of discrimination are disconnected from charges filed within the July 1994 through June 1995 period.

The Commission, however, argues that a period from January 1, 1993 through the present is justified. The Commission asserts that it will show through the use of statistical and anecdotal evidence that Defendant's word of mouth hiring and subjective promotional and hiring decisions during this entire period had an adverse impact on African–Americans and females. The Commission further contends that several employees attested to Defendant's discriminatory patterns and practices before and during the EEOC's investigation and that the claims of all class members who have been discriminated against since January 1, 1993 should be considered because at least one class member alleged a violation within three hundred (300) days prior to the filing of the Commissioner's Charge. Furthermore, the Commission avers that charges and complaints of discrimination by Lisa Loesel, Roberta Wilson, Constance Amos, and Terry Weakes, warrant extending the temporal scope of this case from June 1995 to the present.

The Supreme Court has held that Title VII gives the EEOC very broad powers of investigation and affords the EEOC access to "virtually any material which might cast light on the allegations against the employer." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68–69, 104 S.Ct. 1621, 80 L.Ed.2d 41

---

**2.** A court may hear evidence of otherwise time-barred facts when a continuing violation

is shown. *Alexander,* 177 F.3d at 408.

(1984); *accord EEOC v. Roadway Express, Inc.*, 261 F.3d 634, 642 (6th Cir. 2001) ("*Roadway Express*"). The Sixth Circuit has held that "Title VII of the Civil Rights Act of 1964 should not be construed narrowly, and the Commission may, in the public interest, provide relief which goes beyond the limited interests of the charging parties." *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355, 358 (6th Cir.1969). Therefore, "an employer's 'pattern of action' [is] relevant to the Commission's determination of whether there is reasonable cause to believe that the employer has practiced ... discrimination." *Id.*

 "Although the relevance requirement places some temporal limits on the scope of the [Commission's] inquiry, ... [e]vidence of hiring and promotion practices prior to the time of the charge provide context to allow the EEOC to determine whether alleged discrimination actually took place." *Roadway Express*, 261 F.3d at 642 (citing *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 46–47 (6th Cir.1994)) ("*Ford*"). "Comparative information ... is absolutely essential to a determination of discrimination," *Ford*, 26 F.3d at 47, and post-charge data "[l]ike pre-charge data ... provides ... [a] necessary [context] to evaluate whether discrimination [has] occurred." *Roadway Express*, 261 F.3d at 642.

 "[T]he trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant" in discovery matters relating to employment discrimination cases. *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). Thus, Courts may consider "the burdensomeness of furnishing the information requested by the plaintiff." *Miller v. Hygrade Food Prod. Corp.*, 89 F.Supp.2d 643, 657 (E.D.Pa.2000). Courts typically will permit discovery in employment discrimination cases to cover a reasonable number of years before and after the al-

leged discrimination. *See, e.g., James v. Newspaper Agency Corp.*, 591 F.2d 579, 582 (10th Cir.1979) (allowing discovery into four-year period prior to alleged discrimination); *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D.Minn.1997) (allowing discovery into two-year period following alleged discriminatory termination). Some courts have followed a "five year rule," limiting discovery to "five years prior to the date of the alleged discriminatory act." *See, e.g., McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 63 (E.D.Pa.1979) (limiting discovery to approximately five years prior to alleged violation); *Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632 (E.D.Pa.1977) (five years); *Cormier v. PPG Indus., Inc.*, 452 F.Supp. 594, (W.D.La.1978) (five years). Other courts have found it reasonable to limit the temporal scope of any post-charge investigation to a two-year period after the alleged discriminatory violation. *See, e.g., Hicks v. Arthur*, 159 F.R.D. 468, 471 (E.D.Pa. 1995) (allowing discovery into two-year period following alleged discriminatory demotion and failure to place in former position when the position became available); *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 62–63 (D.N.J.1985) (allowing discovery for two-year period following termination of employment).

The Court finds it reasonable to begin the period for discovery of pre-charge data in this matter on January 1, 1993, the date specified in the Commissioner's Charge. This period is within the five years preceding the Commissioner's Charge on May 31, 1995. The court notes that Defendant has destroyed many records prior to July 1994. Thus, from January 1, 1993 through July 1994, Defendant will be responsible only for records and information that are retrievable and have not been destroyed.

The court further finds it reasonable to end the period for discovery of post-charge data in this matter on July 3, 2002, two

years after the last date recorded in Intervener Amos's charge of discrimination against Defendant. Discovery from January 1, 1993, through July 3, 2000, two years after Intervener Amos's last allegation of discrimination, is particularly relevant to the EEOC for purposes of demonstrating a continued violation or pattern of discrimination and for comparative information. Accordingly, the court denies Defendant's motion to limit the temporal scope for discovery in this matter. Thus, the discovery period will begin on January 1, 1993 and end on July 3, 2002.

## IV. Monetary relief

Defendant argues that the court should limit the back pay recovery in this matter to 300 days before the filing of the Commissioner's Charge because the "continuing violation" doctrine does not apply to this case and because Defendant cannot produce any discoverable evidence or information before July 1994. Section 2000e–5(g)(1) states that "[b]ack pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission." The court has previously decided that the "continuing violation" doctrine does apply to the instant action.

Furthermore, the provisions of Section 2000e–5(g)(1) are unambiguous, and Defendant cites no case law in support of limiting the two-year back pay liability period because a Defendant alleges that it is unable to provide discoverable evidence or information about this period. The Supreme Court has held that the purpose of fashioning an appropriate remedy in Title VII cases is to develop "the most complete relief possible" to eliminate the effects of discrimination. *Teamsters*, 431 U.S. at 364, 97 S.Ct. 1843; *EEOC v. North Hills Passavant Hosp.*, 455 F.Supp. 335, 338 (W.D.Pa.1978). "By allowing for the possibility of recovering back pay for over a year prior to the 300 day filing period,

'Congress must have envisioned continuing remediable violations that existed prior to the running of the period.'" *Sabree v. United Bhd. of Carpenters and Joiners*, 921 F.2d 396, 401 (1st Cir.1990). Accordingly, "[i]f in fashioning a remedy, a court could not reach back beyond the 300 day filing period, the two-year back pay limitation would be meaningless." *Id.* Plaintiff asserts that it has evidence of discrimination prior to the 300 day filing period. Therefore, the court denies Defendant's motion to limit back pay recovery.

## V. Conclusion

For the foregoing reasons, the court DENIES Defendant's motion for summary judgment on the issue of laches, DENIES Defendant's motion to limit the temporal scope of discovery and DENIES Defendant's motion to limit monetary relief in this matter.